## CHAS. H. PROCTOR v. THE STATE.

### No. 3899.   Decided June 29, 1908.

**1.—Murder—Evidence.**

Where upon trial for murder the court admitted testimony as to statements and acts of one of the conspirators before the conspiracy with defendant had been shown, but which was shown thereafter; and the court properly submitted the question of conspiracy to the jury, it was immaterial whether the acts of the co-conspirator in the absence of the defendant were introduced before the conspiracy was proved or afterwards.

**2.—Same—Evidence—Refreshing Memory of Witness.**

Upon trial for murder there was no error in permitting the State's witness to refresh his memory from his former written testimony after he had been examined by both parties, and to have him answer a question by the district attorney upon which he could not clearly testify in his examination in chief.

**3.—Same—Evidence.**

Where upon trial for murder the State's objection to the question at whose instance the witness was first subpoenaed having been sustained, the witness nevertheless in his further examination stated that he was first summoned by the State, there was no error.

**4.—Same—Evidence—Impeaching Witness.**

Upon trial for murder where the defense was insulting language and conduct towards defendant's female relative, there was no error in permitting the State to show that the said female relative had made different statement to other parties, after the homicide, concerning the alleged insult to her than her statement on the witness stand; this testimony being properly limited by the court's charge to purposes of impeachment.

**5.—Same—Evidence—Conspiracy.**

Where upon trial for murder the evidence showed that a short time after the homicide the defendant and his brother were seen together, and the defendant directed his brother to get a cartridge for his (defendant's) pistol, and where to find it, and that said brother started towards said place; there was no error to permit the State to show that the defendant's brother was seen at said place and got said cartridge and fit it in the pistol, in defendant's absence; the court properly submitted this issue to the jury.

**6.—Same—Charge of Court—Insult to Female Relative.**

On trial for murder where the defense claimed insult to female relative, there was no error in the court's charge that if the jury believed from the evidence that defendant's co-conspirator and brother was informed that the deceased had used insulting words or had been guilty of insulting conduct towards his daughter, that he believed it to be true, and that he killed him the first time he met him, and knew him, after being so informed, then this would be adequate cause; although it was not necessary to charge that defendant knew deceased.

**7.—Same—Charge of Court—Conspiracy—Principal—Charge as Whole.**

Upon trial for murder, where the evidence raised the issue of conspiracy between defendant and his brother to kill the deceased, there was no error in the court's charge on this phase of the case to instruct the jury to acquit the defendant, unless he was present and knew the unlawful intent of his brother and acted together with him when the latter killed the deceased, etc., and that said brother committed said offense in pursuance of a common intent and in pursuance of a previously formed design in which the minds of both united and concurred; especially when considered with other portions of the court's charge.

**8.—Same—Charge of Court—Words and Phrases.**

Where upon trial for murder the court in his charge on self-defense used the phrase "you will consider it" instead of "may consider it" the objection thereto was hypercritical.

**9.—Same—Sufficiency of Evidence.**

Where upon trial for murder the evidence showed that deceased was killed by defendant or his brother acting together for offering insults to the defendant's niece, a verdict of manslaughter was sustained.

Appeal from the District Court of Cass. Tried below before the Hon. P. A. Turner.

Appeal from a conviction of manslaughter; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*T. D. Rowell, O'Neal & Figures,* for appellant.—On question of admitting evidence of third parties on conspiracy: Hightower v. State, 22 Texas, 605; Arnold v. State, 9 Texas Crim. App., 435; Rhodes v. State, 39 Texas Crim. Rep., 332. On question of admitting testimony of acts of co-conspirator after conspiracy: Cortez v. State, 24 Texas Crim. App., 511; Holden v. State, 18 Texas Crim. App., 91; Armistead v. State, 22 Texas Crim. App., 51; Murphy v. State, 36 Texas Crim. Rep., 24.

*F. J. McCord,* Assistant Attorney-General, for the State.—On question of admitting testimony on conspiracy: Smith v. State, 21 Texas Crim. App., 107; Harris v. State, id., 478; Clark v. State, 28 Texas Crim. App., 189; Armstrong v. State, 22 Texas Crim. App., 51.

BROOKS, JUDGE.—Appellant was tried in the District Court of Cass County and convicted of manslaughter and his punishment assessed at five years confinement in the State penitentiary.

The evidence in substance shows that deceased, Harry Newman, a young man, was at a picnic near the town of Jefferson, having gone there from Marshall where he lived; that he offered an insult to Miss Effie Proctor, the daughter of W. R. Proctor; that W. R. Proctor is a brother of Chas. H. Proctor. The evidence further shows that the deceased invited Miss Effie Proctor to go with him for a walk and when a short distance from the pavillion where a dance was proceeding, he unbuttoned his pants and showed the young lady his privates and she screamed and ran back to the pavillion. The Proctors thereupon proceeded to hunt for and finally found the deceased at the depot in Jefferson waiting for a train to go back to Marshall. W. R. Proctor took his daughter to the depot to identify the deceased. The Proctors, at that time, were not acquainted with deceased. When they arrived there, the Proctor brothers brought the deceased into the presence of the daughter and she identified him. Then Chas. H. Proctor, the defendant, who had a pistol in his hand, according to the testimony of some of the witnesses, hallooed to the crowd to stand back and immediately fired a pistol and the bullet entered the back of deceased's head, from which he instantly died. Several witnesses swear positively that W. R. Proctor did the shooting, but some of the testimony clearly suggests that Chas. H. Proctor, appellant, did the shooting. The evidence clearly suggests and the court prop-

erly charged on the doctrine of conspiracy; that is, that the Proctors had conspired to kill the deceased, which they did on the first meeting after the insult was offered to the daughter of W. R. Proctor.

Bill of exceptions No. 1 shows that while the witness, Izaiah Goldberg, a witness for the State, was on the stand and after he had testified that W. R. Proctor, Miss Effie Proctor and himself were in a carriage on their way from the picnic grounds to town, they being the only persons in the carriage, except Christopher, the driver, the defendant Chas. H. Proctor not being present, the witness was permitted to tell what W. R. Proctor said to his daughter in the absence of the defendant. Thereupon the witness stated that W. R. Proctor said to his daughter, Miss Effie Proctor, "You say he is red-headed," and she said "Yes;" that then he said nothing more until he got to Robert's saloon, when the said W. R. Proctor said to Miss Effie Proctor, "keep your eyes peeled or be on the lookout." W. R. Proctor then went into Robert's saloon and came right out, did not stay there over a second or two. This testimony was objected to because there was evidence to show a conspiracy between W. R. Proctor and Chas. H. Proctor and no evidence had been introduced to show that the said W. R. Proctor and Chas. H. Proctor were principals in the commission of the offense. The court overruled all of said objections and approved the bill with the following explanation: "This occurred before the killing. I had tried this case once before and knew that the evidence would show prima facie a conspiracy. The jury were charged to consider the acts and declarations of W. R. Proctor in furtherance of the common purpose done or said before the homicide if the evidence showed a conspiracy beyond a reasonable doubt, otherwise to disregard them. See evidence of Izaiah Goldberg. It shows a conspiracy; when the parties in the carriage left the picnic grounds C. H. Proctor asked W. R. Proctor if he had a gun; W. R. Proctor replied, "No, let me have yours." C. H. Proctor replied, "No, you go and find him and send for me!"

We do not deem it necessary to collate all the evidence in this case showing a conspiracy on the part of the Proctor brothers to kill the deceased, and it is by no means certain from this record as to which one fired the fatal shot. It is true all the witnesses that swear positively swear that appellant's brother shot the deceased, but the circumstances are very cogent that appellant did the shooting. Be this as it may, the evidence was clearly admissible. It is not necessary, but the better practice, under the rules of this court, to first establish a conspiracy before permitting the declarations of the conspirators in the absence of each other would be admissible, but the testimony is admissible and the court properly admits same where the evidence suggests a conspiracy. The evidence in this case conclusively shows a conspiracy and it is immaterial

Vol. 54 Crim.—17.

whether the acts of the party in the absence of the defendant were introduced before the conspiracy was proved, or afterwards, the conspiracy having subsequently been proved. See Smith v. State, 21 Texas Crim. App., 107; Clark v. State, 28 Texas Crim. Rep., 189; Armstrong v. State, 22 Texas Crim. Rep., 51; Stevens v. State, 42 Texas Crim. Rep., 154; Cain v. State, 42 Texas Crim. Rep., 210. The court in his charge told the jury to disregard the acts and conduct, as well as declarations of W. R. Proctor, unless the State had proved a conspiracy in this case.

Bill of exceptions No. 2 shows that while Hendrix Lowery, a witness for the State was on the stand, and had testified in chief for the State, and had been turned over to appellant's counsel to be examined and they had completed their cross-examination, the district attorney had handed to the witness Lowery a carbon copy of his testimony heretofore taken six months ago on the trial of this case, with the request from the district attorney to the witness that he read over the carbon copy, the witness having already testified in his direct examination on this trial that he did not remember whether or not the defendant Chas. H. Proctor had hold of the deceased at the time he was shot, and after the witness Lowery had read said carbon copy, the district attorney asked him what, if anything, was Chas. H. Proctor doing at the time Newman was shot. The witness then answered that he had hold of him. This bill is approved with this statement: "The witness said it had been a long time and that he could not remember and said that his memory was fresher and better at the first trial and he would like to read his evidence; after reading it he said he now remembered distinctly. Defendant was offered an opportunity to cross him." There was no error in the action of the court in overruling this objection. The witness had a right to refresh his memory from his former testimony, if after reading same he could swear same was true. This was a proper practice and a legitimate mode of getting the facts before the jury.

Bill of exceptions No. 3 shows that while Clyde Munden, a witness for defendant was on the stand, the defendant's attorney asked said witness at whose instance he was first subpoenaed to attend this court, six months ago. The court refused to permit said question according to the bill, but same is approved with this explanation: "After the objection was sustained in the examination of the witness he testified to all the above facts. That he was a deputy sheriff of Harrison County, lived at Marshall, knew Harry Newman and was his friend; that he was first summoned as a witness by the State, was excused by the State and was afterwards attached as a witness for the defendant. When the witness first took the stand the defendant asked at whose instance he was first summoned, by the State or defendant, objection was made that it was immaterial and sustained, but this very fact was afterwards testified to by this

same witness, as well as the other facts stated above." Clearly with this explanation there could have been no injury in the ruling of the court.

Bill No. 4, shows that the State was permitted to prove by Whit Castner, over appellant's objection, the following: That Miss Effie Proctor came to the home of the defendant Chas. H. Proctor, after the killing, crying, and that Mrs. Eddie Proctor introduced her to the witness, and that Mrs. Eddie Proctor then asked Miss Effie Proctor what on earth the young man had done to her to cause all this trouble, and that Miss Effie Proctor replied that he had asked her while at the dance platform to go with him to the lemonade stand to get a glass of lemonade, and that she told him that she did not want any lemonade, and that he then asked her to go with him to the water-barrel to get some water, and that she told him that she did not want any water, and that he then said that he wanted to see her on some other business and that this was all that was done or said and that she took this as an insult. Appellant objected to this because in the absence of the appellant, and because said evidence was wholly immaterial and highly prejudicial to the rights of appellant, because the true issue in this case is not what Miss Effie Proctor may have told Mrs. Eddie Proctor in the presence of the witness Whit Castner after the killing as to what the insulting words and conduct of the deceased were towards her, but the real issue is as to what Miss Effie Proctor told her father, W. R. Proctor, and her uncle, Chas. H. Proctor, the appellant. The court approves this bill with the statement that the charge limits this evidence to impeaching purposes. It in some respects contradicts the statement that Miss Effie Proctor made to her father and appellant and to that extent renders improbable that she told her father and appellant what she swears she told him. The testimony was admissible. Norman v. State, 26 Crim. App., 225; Fossett v. State, 55 S. W. Rep., 497; Hobbs v. State, decided at present term. The court properly charged on all phases of manslaughter committed for insults committed to a female relative upon the first meeting.

Bill of exceptions No. 5 complains that the State was permitted to prove by the witness Whit Castner that he saw W. R. Proctor, after the killing of Harry Newman, at Chas. H. Proctor's residence; that W. R. Proctor came there for the purpose of getting a cartridge to fit a pistol that he, W. R. Proctor, then had in his hand of 38 or 41-calibre; that W. R. Proctor, got the cartridge and it fit the pistol; that this was a short while after the killing and defendant Chas. H. Proctor was not present. This bill is approved with this explanation: "See evidence of Walter Jackson. He testified that a short time after the killing he and the two Proctors were together and took a drink together in Dreben's saloon and just after they left the saloon C. H. Proctor told W. R. Proctor to go to his

house and get a cartridge for his pistol, told him where he would find it at his house and the number and kind and that W. R. Proctor at once left them and started towards the house of C. H. Proctor. This was the only act or declaration of W. R. Proctor after the homicide in the absence of C. H. Proctor that was admitted in evidence: see charge of the court as to acts of W. R. Proctor after the homicide in the absence of C. H. Proctor. I charged the jury to consider such acts if they believed from the evidence beyond a reasonable doubt, that C. H. Proctor directed W. R. Proctor to do them, otherwise to absolutely disregard them." Clearly with this explanation the testimony was admissible.

Appellant in his motion for a new trial objects to the following charge: "If you believe from the evidence W. R. Proctor was informed that the deceased Harry Newman, had used insulting words or had been guilty of insulting conduct towards his daughter, and that he believed it to be true, and that he killed him the first time he met him, and knew him, after being so informed, then this would be adequate cause." The error complained of by appellant is that it did not only require the killing must take place the first time that W. R. Proctor met deceased after he was informed of the insult to his daughter, but also that he, W. R. Proctor, must know the deceased in order to reduce the homicide to manslaughter. It was not necessary for the charge to contain the statement that he knew him, but such statement could certainly not have injured appellant. There is no question but what deceased's name was Harry Newman. There is no question but what appellant and his brother together, or one or the other of them, killed Harry Newman for insults to the daughter of W. R. Proctor.

The eighth ground of appellant's motion for new trial complains of the following charge: "If you believe from the evidence, beyond a reasonable doubt, that W. R. Proctor unlawfully shot and thereby killed said Harry Newman with a pistol, and that he was not justified in so doing on the grounds of self-defense as that law is given you in this charge hereafter, then you will find the defendant Chas. H. Proctor not guilty, unless you find from the evidence beyond a reasonable doubt that the defendant was present and knew the unlawful intent of W. R. Proctor and acted together with him in the commission of said offense and aided him by acts or encouraged him by words or gestures in the commission of said offense and that W. R. Proctor committed said offense in pursuance of a common intent and in pursuance of a previously formed design in which the minds of both united and concurred." Appellant insists that the latter part of said charge is error because same does not state with whom he, W. R. Proctor, had formed the common intent to commit the offense and because the same does not state with whom the previously formed design to commit the offense was entered into. A charge must

be read as a whole when passing on this character of criticism. Furthermore, we do not think the charge is subject to the criticism when viewed alone.

The tenth ground of the motion complains of the following charge: "If you find that the State has introduced any act of W. R. Proctor done by him in the absence of Chas. H. Proctor, after the commission of the homicide, then you will not consider it in finding your verdict, but you will wholly disregard it unless you find from the evidence beyond a reasonable doubt that Chas. H. Proctor directed said W. R. Proctor in which event you will consider it as legal evidence in the case against Chas. H. Proctor." There was no error in this charge. Appellant's criticism is that the court says, "you will consider it" instead of "may consider it." This is hypercritical. The court, in this case, charged on the law of self-defense, but as the assistant attorney-general suggests, we have read the evidence carefully and we see nothing in the same to suggest the issue of self-defense. However, the court's charge is correct if the issue had been in the case when read as a whole. See Hoover v. State, 35 Texas Crim. Rep., 342.

The evidence in this case conclusively shows that deceased was killed for offering insults to appellant's brother's daughter. It further shows that appellant heartily and thoroughly cooperated in the incipiency of the matter with his brother in killing the deceased; that the killing took place upon the first meeting and the evidence thoroughly supports the verdict. The charge is in no respects erroneous, such as requires a reversal of this case. Finding no error, the judgment is affirmed.

*Affirmed.*

[Motion for rehearing dismissed on account of death of appellant, October 14, 1908.—Reporter.]