HORACE WELLS V. THE STATE.

No. 15783.   Delivered April 5, 1933.
Reported in 59 S. W. (2d) 124.

The opinion states the case.

*S. F. Rose,* of Amarillo, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for possessing intoxicating liquor for purposes of sale; punishment, two years in the penitentiary.

According to the state's testimony Carl Hays called a taxicab company in Amarillo and asked the party answering the phone if whisky could be sent to 512 Monroe street in Amarillo. Presently appellant and one Pee Wee Cantrell appeared in a car driven by Cantrell. Mr. Hays testified that he talked to a party at the taxicab company who answered the name of Jack. Hays further testified that, when appellant and Cantrell appeared at 512 Monroe street, he asked them if they had it, and both of them answered that they did. He said both of them handed him a package, that is, that one handed it to the other and the other handed it to witness. He said both of them asked him for the money. The package contained two half-gallon jars of whisky. After delivering to Mr. Hays this whisky, appellant and Cantrell started away; appellant jumped from the car and ran, and threw down another half-gallon jar of whisky and broke it. Jack Plummer was introduced for the defense and testified that he was at the taxicab company and some one called up who gave his name as Carl and said he wanted whisky. Plummer said this party told him if he could get a gallon to bring it to 512 Monroe street. He said that when he hung the receiver up he turned to Pee Wee Cantrell and said "He must think I am a bootlegger, or something," and laughed about it. Cantrell wanted to know what was the matter, and witness told him what the party had said. Cantrell asked him if he could not fix the fellow up, and witness told him that he would have nothing to do with it, and Cantrell replied: "You are a hell of a cab driver." He said Cantrell presently left the taxicab company's place. Sam Martin testified that he was talking to appellant on the day of appellant's

arrest, and Pee Wee Cantrell came along in a car and said to appellant: "I am going your way, do you want to go home?" Witness said that appellant got in the car with Cantrell, and he later learned that appellant was arrested shortly afterward. Appellant took the stand and testified that he was talking to Martin when Cantrell came by. He said Cantrell said to him that he was going by his house and if he wanted to ride home to get in; that he got in the car with Cantrell. He had had no conversation with Plummer, and knew nothing about any conversation that Plummer had had with a man named Carl. He did not know what was in the car except he saw two packages lying on the seat. The contents of the packages were not visible to him. He further testified that as they were going on out toward his neighborhood they passed 512 Monroe street and some one was sitting on the running board of a car in front of said house. He identified that man as being the witness Carl Hays. He said as they approached Hays came up to the side of the taxicab and said something to Cantrell, in effect, "Did you get it?" and that Cantrell said yes. He testified that Cantrell handed Hays a package and Hays said something about it, but that he, witness, did not say a word. He said Cantrell opened the package and showed Hays that it was whisky, and this was the first time that he knew that there was any whisky in the car. He said he had no interest in the whisky, did not own it, and did not hand the whisky to Hays or to Cantrell. He admitted that some confusion arose and when the car started, Cantrell said to him "Break that," and he did so; that he jumped out of the car and broke the half gallon of whisky. He said he did not know what made him do it, except that it was lying on the seat and Cantrell asked him to do it. He further affirmed that Cantrell had the packages in the car when he, witness, got into it, and that his sole and only purpose in being in the car was to go home.

There are three bills of exception. By the first complaint is made of the fact that at a certain period in the proceedings, after both the state and defendant had rested their cases, the district attorney told the court that he had one witness who was not present and that she would have to be called by telephone, and asked that a recess be taken until said witness could come; that the jury were sent to their room at this time, and appellant, through his attorney, then advised the court, out of the presence and hearing of the jury, that the state was bringing Mrs. Harty, United States Commissioner for the Northern District of Texas, as a witness to testify to statements made by

defendant at a time when he was under arrest for the same offense for which he was on trial, and at the time the purported statement was made appellant was unwarned, and the statement was inadmissible because of the fact that appellant was under arrest and unwarned. It is made to appear that counsel informed the court that the state desired to ask Mrs. Harty, in the presence of the jury, if appellant had not told her, at the time referred to, that he was alone responsible for the presence of the whisky in Cantrell's car; that he was guilty, and wanted her to let Cantrell go without bond. It is also shown further from this bill of exception that appellant requested the court to conduct a hearing in the absence of the jury, to ascertain whether or not this testimony was admissible; and after the witness came, and while the jury were still out of the courtroom, the defendant, in open court, again told the court that since the witness was present he desired to call the attention of the court to the testimony that the state was going to ask her about, and asked the court to interrogate the witness in the light of the statements made to him by appellant's attorney, in order that the court should not permit the defendant's case to be prejudiced by the asking of Mrs. Harty, in the presence of the jury, as to the statements made by appellant which were inadmissible. It also appears in this bill that while appellant was testifying in his own behalf, and was being cross-examined by the state, he was asked by the state's attorney if it was not true that he orally stated in the office of the United States Commissioner that the whisky in the car of Cantrell, at the time here being investigated, was his; to which question the defendant had objected because he was under arrest, and any statement made by him at such time was inadmissible if not reduced to writing and warning given; that it was not res gestae, which objections were by the court overruled, and appellant had been compelled to testify that he did not recall such statements or remember making them. In this connection appellant further set up that to allow the state's attorney to ask Commissioner Harty, in the presence of the jury, if appellant did not orally state to her when he was brought before her under arrest and unwarned, that the whisky had by him and Cantrell at the time of their arrest, was his and that Cantrell had nothing to do with it, would compel appellant to object and would be thus getting before the jury by the mere asking such question a matter which would be prejudicial and which would greatly harm his cause before said jury, and would cause the jury to connect such question with

the statement which had been asked him over objection, and which he had said he did not remember. The bill further sets out that the court declined to pass in advance upon the admissibility of the testimony of Commissioner Harty, and the jury were returned into the courtroom, and over appellant's objection Mrs. Harty was asked by the state if appellant had said, when brought before her with Cantrell in reference to the very occasion and facts here involved, that the whisky belonged to him and Cantrell had nothing to do with it. The bill further sets out that when this question was asked in the presence of the jury, appellant objected on the ground that he was under arrest and unwarned, and the court promptly sustained the objection.

This bill is qualified by the learned trial judge who approves the statements made therein, but says that the witness Harty testified both in the absence and presence of the jury, and in the presence of the jury she testified that appellant and Cantrell were brought before her as United States Commissioner, in the custody of prohibition officers, and were under arrest. She was then asked by the district attorney if appellant did not make the statements to her which are set out above, and the court sustained the defendant's objection to the question and any answer thereto. The court certifies that nothing else occurred in reference to the testimony of this witness in the presence of the jury. He says the jury was then retired, and in their absence the witness testified that Cantrell and appellant were brought before her under arrest, in the custody of officers, but that neither was sworn, nor asked for a hearing, but that she questioned them there before her, and in the presence of appellant, Cantrell told her he had nothing to do with the transaction, and appellant told her that Cantrell knew nothing about the whisky being in the car, and had nothing to do with it. She further testified that she discharged Cantrell without bond because of what appellant said to her about Cantrell having nothing to do with the whisky.

We have no doubt of the injury resulting to appellant from the matters set out in his bill of exception. Similar questions have been before this court. See Faulkner v. State, 189 S. W., 1077; Bullington v. State, 180 S. W., 679. See, also, Spicer v. State, 105 S. W., 813; Rice v. State, 51 S. W. (2d) 364; McClure v. State, 95 Texas Crim. Rep., 53; Long v. State, 43 S. W. (2d) 932.

The matters complained of in bill of exception No. 2 will not be discussed in view of the reversal made necessary by our

holding in regard to bill of exception No. 1. If upon another trial of this case the evidence should be in the same condition as here and present the theory that appellant had no knowledge of the contents of the packages in the car until they reached 512 Monroe street, and that he had no interest in the transaction in any way, a charge should be given, in effect, if the jury believe this, or have a reasonable doubt thereof, they should acquit. Regardless of whether appellant made a foolish explanation of his conduct in regard to breaking a jar of whisky, this would be a matter of argument, and its truth and weight for the jury. Every right of any citizen accused of crime should be fairly safeguarded, and every theory of fact fairly raised on such trial should be submitted to the jury, who are the exclusive judges of the credibility of the witnesses and the weight to be given their testimony.

For the error mentioned, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*