Cecil MATHIS, Appellant,

v.

The STATE of Texas, Appellee.

No. 42990.

Court of Criminal Appeals of Texas.

July 22, 1970.

On State's Motion for Rehearing
Nov. 10, 1970.

Appellant's Rehearing Denied
May 5, 1971.

Appellant's Second Rehearing Denied
June 16, 1971.

Dennis White, Melvyn Carson Bruder, Dallas (Court appointed on appeal), for appellant.

Henry Wade, Dist. Atty., John B. Tolle, Camille Elliott, Harry J. Schulz, Jr., W. T. Westmoreland, Jr., and Edgar Mason, Asst. Dist. Attys., Dallas, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

MORRISON, Judge.

The offense is robbery by firearms; the punishment, 60 years.

In view of our disposition of appellant's grounds of error eight (8) and nine (9), we pretermit discussion of the other alleged errors.

In the presence of the jury, the state called as their witness appellant's co-indictee, Jackie Green, and the following order of sequence occurred:

"Q. (By the prosecutor, Mr. Glover) State your name to the jury.

"A. Jackie Eugene Green.

"Q. Green, directing your attention back to March the 3rd, 1968 (the day of the robbery), around 5:30 a. m. on

---

that morning, I will ask you: Were you at your stepsister's house on Fourth Avenue?[1]

MR. MALONEY: (Court appointed counsel for the witness) Object, your Honor, at this time as Court-appointed counsel for Jackie Eugene Green. I will instruct the witness of his privilege against self incrimination guaranteed by the Constitution of the United States.

"Q. (By the prosecutor) Were you at your stepsister's house on Fourth Avenue?

MR. MALONEY: Once again, Your Honor, I will instruct the witness not to answer that question on the basis that he is not required to incriminate himself on the ground of the Constitution of the United States.

MR. GLOVER: May we have the witness testify on this?

\*　　\*　　\*　　\*　　\*　　\*

"Q. (By the Court) Jackie Eugene Green, is it your desire to claim your constitutional rights of not to testify for fear of incriminating yourself if you testify?

"A. Yes Sir.

MR. GLOVER: May I go on, Judge?

I am going to continue my examination of this witness, and he can invoke the Fifth Amendment from now until Doomsday, but I am going to continue with my examination of the witness.

THE COURT: All right.

MR. LANDAU (Attorney for the defendant): Your Honor, I object to the continuous examination of this witness who has invoked the Fifth Amendment of the United States Constitution, not

---

1. The relevancy of the question bears on the issue of alibi in that there was testimony of the accused being at Green's stepsister's house at the time of the commission of the offense.

to incriminate himself, and what the prosecutor is trying to do—he is trying to do indirectly what he couldn't do directly. He is attempting to put to this witness questions which this witness refused to answer under the basis of the Fifth Amendment of the United States Constitution.

\* \* \* \* \* \*

MR. GLOVER: Your Honor, I have seen the Fifth Amendment invoked many times, and he can invoke it to each question that is asked.

\* \* \* \* \* \*

MR. GLOVER: Judge, I have never talked with this witness. I don't know what he wants to invoke the Fifth Amendment with regard to."

Thereafter, in the absence of the jury, the prosecutor stated that the witness Green had given a confession to the police, that his purpose in examining the witness concerned the confession.[2] As an illustration of the prosecutor's purpose, we quote from the record:

THE COURT: The point I am getting at is: Are you trying to get things before this Jury that you may not properly and legally do when he claims his Constitutional right not to testify?

Now, you can answer that very simply.

MR. GLOVER: Judge, this is simply a matter of courtroom strategy. I have seen this done in a number of courtrooms.

Ultimately, the witness was excused without further questioning. Throughout the questioning and argument of counsel before the jury, appellant objected to the proceedings because of the prosecution's attempt to do indirectly what was prohibited directly.

2. If the prosecutor had been permitted to question the witness from his confession in the face of a refusal to answer, a reversal would be required, Douglas

Complaint is made that the calling of Jackie Green amounted to prosecutorial misconduct and that the proceedings deprived appellant of his right to cross-examine Green. With such contention, we agree, as we did in Vargas v. State, Tex. Cr.App., 442 S.W.2d 686, where we quoted the following language from Washburn v. State, 164 Tex.Cr.A. 448, 299 S.W.2d 706:

"Unless the witness had agreed to turn state's evidence, the prosecution ought not to place him on the stand; to do so and wring from him a refusal to testify, affording the jury an opportunity to consider the refusal as a circumstance of guilt, has been said to be 'certainly prejudicial'."

This is so because:

"When a witness claims his privilege, a natural, indeed an almost inevitable inference arises as to what would have been his answer if he had not refused." [3]

When the prosecutor has reason to believe or knows that a co-indictee will refuse to testify when called, that co-indictee may not be called and thereby compelled to or invited to refuse to testify. San Fratello v. United States, 340 F.2d 560, 565 (5th Cir., 1965) quotes from the Third Circuit as follows:

"In our view an interrogating official himself gravely abuses the privilege against self-incrimination when, believing a truthful answer will incriminate a witness, he nevertheless insists on asking the incriminating question with a view to eliciting a claim of privilege and thereby creating prejudice against the witness or some other party concerned."

In Johnson v. State, 158 Tex.Cr.R. 6, 252 S.W.2d 462, which was almost an identical situation to the case at bar, we said, "This should not have been allowed and constitutes error, as it could be offered for no other purpose under the circumstances than to compel or invite the said Bell, who was

v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934.

3. United States v. Maloney, 2 Cir., 262 F.2d 535.

then under indictment for the same offense, to refuse to testify in order to use this as an incriminating fact against the appellant." Compare Wall v. State, Tex.Cr. App., 417 S.W.2d 59 (1967); 86 A.L.R.2d 1446n; Washburn v. State, supra; Rice v. State, 121 Tex.Cr.R. 68, 51 S.W.2d 364; Rice v. State, 123 Tex.Cr.R. 326, 59 S.W.2d 119; and McClure v. State, 95 Tex.Cr.R. 53, 251 S.W. 1099, where we said:

> "Certainly, if no inference of guilt can be indulged against the man who declines to testify, none could be drawn as to the guilt of a co-defendant."

No efforts were made by the state, prior to calling Green as a witness to determine if he would "turn state's evidence." The state is charged with notice that the co-indictee might refuse to testify. To believe that a co-indictee, when called as a witness for the state, would testify on behalf of the state and thereby incriminate himself tests the credulity of any man for it is certainly no more reasonable to assume that he will testify than it is to assume he will not. What we hold is that when the state seeks to use the testimony of a co-indictee, the prosecutor must, in advance of calling the co-indictee, determine that the co-indictee will testify on behalf of the state and will not rely upon his Fifth Amendment right. Any other holding would permit the state to indiscriminately call co-indictees and capriciously utilize their refusal to testify as a circumstance of guilt against the accused.

The burden imposed upon the state is not intolerable in view of the risk to the accused that he be convicted because of his co-indictee's constitutionally secured silence. The discharge of the burden is complete when the prosecutor interviews the witness prior to trial, either out of the courtroom or in the courtroom and out of the jury's presence, and determines that the witness will not exercise his Fifth Amendment right. The burden does not mean that if the co-indictee changes his mind after the interview, and upon taking the stand, exercises his right, error will result.

What it means, quite simply, is that the state make a conscientious effort to avoid inferring the accused's guilt in this manner.

Because of the error set forth above, the conviction is reversed and the cause is remanded.

## OPINION ON STATE'S MOTION FOR REHEARING

DOUGLAS, Judge.

Appellant was tried with Charles Edward Jones whose case was appealed and was affirmed and is reported in 456 S.W.2d 132, Tex.Cr.App., where the identical issue was presented and overruled.

■ On original submission of the present case the controlling issue was discussed and the case was reversed because, as the opinion stated, the calling of the witness Green by the State without knowing what he would testify to amounted to prosecutorial misconduct.

The reasoning for such a rule is that the inference before the jury would be that co-indictee witness would have answered in behalf of the State had he not refused to testify.

The appellant and not the State first called Green as a witness and the following transpired:

> "MR. LANDAU: (Appellant's counsel) Mr. Bailiff, will you call Jackie Green now?
>
> I would like to call Jackie Green, one of the people—one of the co-principals in this case. He is under indictment.
>
> I would like to call him as a witness.

"MR. GLOVER: (Assistant District Attorney) Judge, we would rather have testimony from the witnesses instead of Mr. Landau.

"THE COURT: Raise your right hand. (Witness sworn.)

"THE COURT: Mr. Green, you are under indictment, as I understand it, in this same case, are you not?

"MR. GREEN: Yes, sir.

"THE COURT: Or in an offense growing out of this same occurrence.

Before you testify, you have the right to have your lawyer present. ·

"MR. GREEN: Yes, sir.

"THE COURT: Do you want your lawyer present before you testify?

"MR. GREEN: Yes, sir.

"MR. LANDAU: I can't ask him—I can't inquire of him—

"THE COURT: Sir?

"MR. LANDAU: I can't make any further questions of him?

"MR. NEAL: (Assistant District Attorney) He can ask for his lawyer to be brought down here, Judge, if he wants to.

"MR. LANDAU: John Chitwood.

"THE COURT: All right. Mr. Bailiff, would you ask Mr. Chitwood to come to the courtroom?

You may leave the witness stand.

"MR. LAUDAU: Your Honor, to expedite this matter, is it possible to have the other lawyers—attorneys of the other prospective witnesses called and it might save a little time."

Appellant then took the stand and testified to an alibi. The record reflects that the robbery occurred at 8:10 A.M. on March 3, 1968. Appellant testified to his whereabouts after 8:00 A.M. and did not testify as to his whereabouts before then.

When it was determined that Green's counsel was out of the city, another attorney, Honorable Robert Maloney, was appointed for and conferred with Green. Mr. Maloney made Green available as a witness. The State then called Green as a witness and asked if he was at his stepsister's house at 5:30 A.M. on the day of the robbery. Mr. Maloney objected and claimed Green's privilege for him. No ruling of the trial judge was obtained. When the State asked the question again, Mr. Maloney claimed the privilege for Green again. The court then ascertained from Green personally that he did not wish to testify. At this time appellant's counsel objected for the first time. No other questions were asked, and, of course, no incriminating answers were given. The witness was excused.

In his argument to the jury, Mr. Landau, appellant's counsel, asked the jury to note resemblance between Green and the appellant in an apparent attempt to raise an issue of mistaken identity.

When the State recalled Green the inference had been established in favor of appellant.

Vargas v. State, Tex.Cr.App., 442 S.W.2d 686, cited in the original opinion, is not in point. There the State called a co-indictee witness who claimed the Fifth Amendment right even under the threat of contempt and the prosecutor stated, "He's already been convicted of the offense for which he is to be questioned." Again in the present case the appellant called the witness and then court-appointed counsel made him available as a witness.

McClure v. State, 95 Tex.Cr.R. 53, 251 S.W. 1099, was reversed because a witness not under indictment called by the State refused to testify and the prosecutor argued to the jury about the refusal to testify and inferred McClure's guilt. The Court held that McClure could not be charged with the concealing and withholding the testimony.

In Johnson v. State, 167 Tex.Cr.R. 162, 319 S.W.2d 397, in an opinion by Judge Morrison, this Court stated:

"Appellant's last contention is that the court committed fundamental error, though no objection was made at the time, in permitting the witness Malone to be called as a witness by the State after

he had told the court that he would like not to testify because his lawyer had advised him 'it was best not to testify,' and relies in argument upon the relatively recent case of Washburn v. State, Tex. Cr.App., 164 Tex.Cr.R. 448, 299 S.W.2d 706, 707. In Washburn, the questions were asked over the vigorous protest of the appellant, and we said: '* * * None of the questions were answered by the witness Nelson. Such questioning covered twenty-one pages of the statement of facts and was in detail as to names, dates and places. By these fact-laden questions the state was permitted to plant in the jury's mind full details as to how they claimed this crime was committed, and yet the only substantive evidence which they were producing was the answer of the witness that he refused to answer on the ground that his answers might tend to incriminate him, which of course was no evidence at all.'

"We find no such situation before us here. As soon as it appeared that Malone would refuse to testify on the grounds that his answers might incriminate him, he was excused.

"Finding no reversible error, the judgment of the trial court is affirmed."

In Johnson the co-indictee was originally called by the State, and after he told the court he did not wish to testify, he was questioned by the State as shown by one full page of the statement of facts. After he formally claimed his constitutional privilege against self-incrimination, he was questioned by the State and this covers some four pages. He was asked, among other things, about his activities with Johnson and Taylor at Brownsville where the automobile was stolen and at Matamoros where the proof showed the three tried to sell it.

In the present case no incriminating question was asked. The Johnson case, supra, presents a much stronger case for reversal, but it was affirmed.

It is apparent that appellant called Jackie Green as a witness in order to show mistaken identity. He argued to the jury that Green resembled appellant. This was a part of the strategy of the trial. The State will not be charged with knowledge that a witness called by a defendant will not testify in the absence of proof.

The fact that Green was asked if he was at his stepsister's house at 5:30 in the morning does not bear upon alibi. If he answered yes, or no, neither would have been helpful to the State nor harmful to the defendant.

No harm or reversible error is shown. We refuse to overrule Jones v. State, supra, decided June 10, 1970.

The State's motion for rehearing is granted and the judgment is now affirmed.

ONION, J., concurs in the result.

MORRISON, Judge (dissenting).

The original opinion was predicated upon prosecutorial misconduct. The majority opinion now concedes that the State called Green to the stand at the time in question.

As further evidence of the prosecutorial misconduct set forth in the original opinion, we quote from the colloquy between the prosecutor and the court, in the jury's absence.

THE COURT: Now before you start your argument before the Court, I will ask you this question: What is the purpose of asking these questions?

MR. GLOVER: Judge, I have a signed confession by this man * * *

THE COURT: That's not the question I asked you, Counsel. I asked you: What is the purpose of asking these questions?

MR. GLOVER: To see whether or not he will confirm or deny any question, or to see whether or not he will testify.

Johnson v. State, 167 Tex.Cr.R. 162, 319 S.W.2d 397, relied upon by the State, in which the writer prepared the opinion for the Court, is not here controlling because in that case it appears that the prosecutor had talked to the witness during the noon hour and the witness had told him that he would testify for the State. There was a clear showing of no prosecutorial misconduct. We further observe that Johnson was affirmed because there was no objection and no adverse ruling which would constitute the basis for a reversal.

I respectfully dissent to the granting of the State's motion for rehearing.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

ONION, Presiding Judge.

Appellant vigorously urges that this Court was in error in affirming the judgment upon the State's motion for rehearing holding there was no reversible error in the prosecutorial conduct of calling a co-indictee to the stand under the circumstances presented.

He further contends that if we were not in error we have never addressed ourselves to the other grounds of error raised on original submission. In this regard he is correct.

The case at bar has caused this Court some concern as evidenced by the earlier opinions and the division of the Court. A review of the facts may set things in a better perspective.

The record reflects that at approximately 8:10 a. m. on March 3, 1968, two colored males entered David Arthur Simmons' grocery store in the city of Dallas and at gunpoint robbed him of $65.00. Simmons identified the appellant Mathis and Charles Edward Jones, who were being jointly tried, as the two men revealing that Mathis brandished a .22 cal. pistol during the course of the robbery. Simmons' son, David, also positively identified Mathis and Jones as the two robbers. Dallas police officer Templeton arrived on the scene shortly after the alleged offense, obtained a description of the two men from Simmons and a 12 or 14 year old boy who was outside the store during the alleged robbery [1] and radioed the facts of the robbery. his investigation and the descriptions to the police dispatcher. Twenty or thirty minutes after receiving a broadcast from the dispatcher and not long after 8 a. m., Dallas police officer Reems observed four colored males pushing a white Chevrolet Corvair automobile approximately a mile from the scene of the robbery. Two of the men fit the description given. He then detained the appellant Mathis, Jones, Jackie Ray Green and Michael Lee Hill.[2] Acting upon a radio call officer Templeton arrived at the scene of the arrest and a search of the persons arrested and the car was initiated. In the back seat of the Corvair a fully loaded .22 caliber pistol was found. A search of the trunk revealed a shotgun. On appellant's person was found a paring knife, three shotgun shells, and $35.00. A search of Jones revealed $10.00.

Within approximately two hours of the alleged offense the complaining witness had identified the appellant and Jones in a police lineup.

Testifying in his own behalf the appellant Mathis, who was on probation for burglary, related he had left his home early on the date in question, a Sunday, when only his 3 or 4 year old niece was awake, that he had gone to his employer's home by 8 a. m. to collect his pay, and was standing in front of a pool hall on Second Avenue when he observed some boys pushing a Corvair and that he went to help since he

---

1. It was established on cross-examination of Simmons' son, David, that the 12 or 14 year old boy outside the store had informed the officer that the two men had left the scene in "a small Chevrolet."

2. It appears from the record that a Luther Johnson was later arrested in connection with the alleged offense.

knew some of the individuals. He testified Jackie Ray Green came up later. Mathis related that it was discovered a gas line was "busted" and that a boy named Jerry left to get a new part when a police officer arrived and arrested him. He denied the officers found anything on him except the money he had received from his employer.

Jones, who had twice previously been convicted of felonies, testified he had been at Claude's Cafe since 1 a. m. and left there about 8:25 a. m. with a man named Jerry in a 1962 or 1963 Corvair to go see Jerry's cousin, who was not at home and on the way back to the cafe the car broke down. He revealed that Michael Hill (who apparently owned the car or had borrowed the same) approached the car, and then Mathis came from the direction of the pool hall and offered to help, and that thereafter Jackie Ray Green appeared. When pushing was of no avail, according to Jones, the hood of the car was raised and when it was discovered a gas line was "busted" Jerry left to get a replacement. Thereafter Jones related the police arrived and arrested the remaining foursome and took $10.00 from him earned working parttime at wrecking houses.

On cross-examination Jones, while admitting he knew Cassandra, Jackie Green's sister, denied he was at Green's house at 5:30 a. m. on the date of the alleged offense or saw her there or anytime during that morning. He specifically denied that he, Mathis, Luther Johnson and Michael Hill met at Green's house at "5:30 that morning."

■ In his first ground of error appellant urges the trial court failed to grant his motion for a mistrial when the complaining witness testified as to extraneous offenses not connected to the appellant.

The record reflects the following occurred during the direct examination of the complaining witness:

"Q. What drew your attention to him (appellant)?

"A. Well, I knew he wasn't a regular customer and we had been robbed several times out there—

"MR. LAUDAU (appellant's counsel): Objection, Your Honor. I ask that the Jury be instructed to disregard that.

"THE COURT: All right. Ladies and gentlemen: You will disregard the statement by the witness.

"MR. LANDAU: And we ask for a mistrial at this time.

"THE COURT: Overruled."

The answer given was certainly responsive to the question asked, and there was nothing to connect the appellant with the earlier offenses mentioned and the careful trial judge was quick to instruct the jury to disregard the statement of the witness.

Under such circumstances, we clearly perceive no error.

■ Next, appellant contends the court erred in admitting into evidence the pistol found in the Corvair, bullets taken from the pistol, and the shotgun since the same were fruits of an illegal search.

First, we observe that appellant made no claim in the court below that his warrantless arrest was without probable cause and that the search incident thereto was illegal. Even if he had, the objection would have been without merit. Officer Templeton made an investigation of the robbery, obtained a description of the robbers and their clothing and the type of car in which they departed and relayed the same to the police dispatcher. Acting upon the police broadcast officer Reems detained the appellant and his companions. The search of the individuals and the car was conducted after Templeton arrived. The facts of this case are markedly similar to those of Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419, except in that case there was also involved the question of the right of the officers to conduct a second warrantless search of the car at another time and place several hours after

the car had been immobilized by the arrest of its occupants. No such question is here presented. The officers had probable cause to arrest without warrant and to search incident to arrest. The items were seized contemporaneous with the arrest.

Still further, the shotgun was never introduced. Testimony as to the shotgun and pistols was admitted without objection and appellant's counsel expressly stated, "no objection" when the pistol bullets were offered.

We, likewise, find no merit in appellant's contention, under the circumstances, that all items taken from the appellant and his codefendant and the vehicle at the time of their arrest were not shown to be connected with the offense charged. Further, no objection on this ground was advanced at the trial.

 Appellant also urges the court erred in admitting a paring knife, certain shotgun shells, and money found on his person. The only objection to such evidence was that the chain of custody was not properly established. Officer Templeton testified he took such items from the appellant, placed them in a large envelope and sealed it, filled out an identification card which he stapled to the envelope and placed the same in the police property room. The envelope was brought to the courtroom by another officer where it was unsealed by the witness Templeton who identified the items. Appellant's complaint at the trial that Templeton should have also written the identification upon the envelope itself is not well taken.

Now we turn to the question which has caused us so much difficulty. After further and deliberate consideration we have concluded that the calling of the witness Green by the State without knowing what he would testify to amounted to prosecutorial misconduct. We further conclude, however, in light of the entire record that the same was harmless error. Har-

rington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284; Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. The evidence against the appellant and his co-defendant was overwhelming. Neither claimed to have been with the witness Green at his sister's house on the morning of the robbery. In fact they testified to the contrary. The questions attempted to be put to Green in the jury's presence did not bear upon their alibi. While the conduct of the prosecutor was certainly not commendable, the error is not such as to call for reversal.

Appellant's motion for rehearing is overruled.

DOUGLAS, J., concurs for the reasons stated in the opinion on State's motion for rehearing affirming this cause.