**John Aruner FARMAH, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 622–90, 623–90.**

Court of Criminal Appeals of Texas, En Banc.

June 15, 1994.

James M. Seabolt, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. & Roger A. Haseman & Vic Wisner, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

*OPINION ON APPELLANT'S PE-*
*TITIONS FOR DISCRETION-*
*ARY REVIEW*

OVERSTREET, Judge.

A jury convicted appellant of aggravated sexual assault and assessed punishment at thirty years imprisonment. The trial court found appellant guilty of aggravated robbery and assessed punishment at five years imprisonment. The Court of Appeals affirmed both convictions. *Farmah v. State,* 789 S.W.2d 665 (Tex.App.—Houston [1st] 1990). This court granted appellant's petition for discretionary review.[1]

The complainant was abducted in West University at gunpoint by two males who forced her into a car driven by a third male. The three men sexually assaulted and robbed her. She reported the crime and described the perpetrators as black males. She did not know their names and could not give a license plate number of the car. She did, however, describe the car as a late 60's or early 70's model Buick with a white top over a maroon bottom.

Officer Johnson, of the West University Police, was assigned to investigate the case. Eight days after the sexual assault, he received information from a United Parcel Service driver who said that when he heard about the sexual assault, he realized that he had witnessed the abduction. The driver wrote down the license plate number of the car in which the complainant was forced into and gave it to Johnson. The driver's description of the car and his claim that two black males were involved was consistent with the information given by the complainant.

After receiving the license plate number, Johnson determined the registered owner of the car. When contacted, the registered owner said the car was sold several years before but did not have the buyer's name. Johnson entered the information regarding the license plate number and car description as a vehicle wanted in connection with the abduction and sexual assault into the National Crime Information Center (N.C.I.C.) computer.

The day after the N.C.I.C. entry, a police dispatcher informed Johnson that a Houston Police Department officer, Horn, reported that he had the car and an "accompanying person." Johnson went to the location and saw the car bearing the noted license plate number. Horn was detaining appellant until Johnson arrived. Johnson took appellant into custody after brief questioning. Appellant claimed to own the car but was unable to give a fixed address. Johnson stated he was afraid to release appellant while he secured an arrest warrant because appellant knew he was a suspect in a sexual assault investigation and would not give a fixed address, and Johnson knew of no ties appellant had to Harris County. He believed it would have been irresponsible to release appellant at that time and took him to the police department.

During the motion to suppress hearing, appellant testified that he was sitting on the back of a broken down car when Horn pulled up behind him, got out of his car, spoke to appellant, then got back into his car. Horn got out of his car a second time, handcuffed appellant and placed him in the back of the police car. Shortly thereafter, Johnson arrived and talked to appellant. Johnson then took appellant to the West University Police Department. Appellant testified that he told Johnson that he was driving a 1974 two-door white and maroon Buick with license plate

1. We granted the following grounds for review:
   1. The First Court of Appeals erred by affirming the action of the trial court in refusing to suppress the alleged confession of Petitioner for the reason that said confession was obtained as a result of two illegal and warrantless arrests in violation of the rights accorded Petitioner under the Fourth Amendment to the Constitution of the United States and Article 14.04 of the Texas Code of Criminal Procedure.

2. The First Court of Appeals erred by affirming the action of the trial court in refusing to suppress the alleged confession of Petitioner for the reason that said confession was not voluntarily given, the same having been obtained as a result of an illegal arrest without any intervening cause, and through deception and coercion in violation of the rights of Petitioner as afforded by the Fourth Amendment to the Constitution of the United States and the Constitution and laws of the State of Texas.

number 783 QVE, and the car was not registered in his name.

Johnson was the only other witness called at the suppression hearing. After testifying regarding the case investigation and arrest, he described the activities which took place after he arrested appellant. When he arrived at the police department, he read appellant his *Miranda*[2] rights and talked with him for about two hours. They discussed the case and appellant gave additional facts that led Johnson to believe that appellant was involved in the assault. The complainant could not identify appellant from a photo spread. Johnson, however, told appellant that she had identified him. During the process, appellant was given food, drinks, and was not denied any requests. He was not promised anything in exchange for his written statement which was given three to four and one-half hours after arriving at the police station. Johnson testified that the statement contained the proper warnings, he read appellant the warnings earlier and repeated them when he read the statement. Appellant acknowledged that he understood the warnings and initialed each element of the warnings on the statement.

After the motion to suppress hearing, the trial court entered findings of fact and conclusions of law. The judge found the following: appellant possessed the described car; he had no address, employment or ties to the county when taken into custody; Johnson had reason to believe that appellant owned the car used and met the general description, i.e. a black male, of a sexual assault suspect; neither Horn nor Johnson had a warrant; appellant confessed four hours after his arrest; appellant received his warnings both orally and in writing before confessing; police adequately fed and cared for appellant before he confessed; the written statement was taken after Johnson falsely represented that the complainant identified appellant; the false representation was not calculated to produce an untruthful confession; and appellant voluntarily signed the confession.

The trial court concluded that Johnson had probable cause to place appellant in custody, and the lack of information concerning appel-

lant and the distinct possibility that he would flee once notified that he was a suspect in an aggravated sexual assault acted as exigent circumstances which justified a warrantless arrest under Art. 14.04, V.A.C.C.P. The court also found that appellant gave his confession after knowingly, intelligently and voluntarily waiving his rights.

On appeal, appellant contended that the confession was a given result of an illegal arrest and was not voluntarily given. The court of appeals first considered whether the arrest was proper under Art. 14.04. That court held that the officers had satisfactory proof that appellant had committed a felony: appellant was apprehended a day after the U.P.S. driver gave Johnson the licensed plate; Horn received information from the dispatcher regarding the sexual assault by black males; the car appellant was driving was not registered to him and was the car involved in the sexual assault; the fact finder could infer that Horn, after speaking with the dispatcher, was justified in detaining appellant under the circumstances; and appellant matched the physical description given by the complainant.

The court also held that there was satisfactory proof that appellant was about to escape since police apprehended appellant one day after they received information regarding the license number, appellant was unable to give an address, and he was also informed that he was a suspect in an aggravated sexual assault case. Given the facts, the court of appeals held that the arrest was justified under Art. 14.04.

The court also considered appellant's claim that the illegal arrest tainted the subsequent confession. The court noted that police gave appellant his warnings several times and characterized Johnson's statement to appellant regarding the complainant's identification as an intervening circumstance that may have caused appellant to confess. Trickery and deception would not render a confession involuntary, according to the Court of Appeals, unless calculated to produce an untruthful confession. Also, the court held that there was no police misconduct. The court

concluded that the warnings and absence of flagrant police misconduct outweighed the presence of an intervening circumstance and the four-hour lapse between the arrest and the confession.

In his petition, appellant argues that the first arrest by Horn was improper because there was no evidence of probable cause in that the State did not call Horn to testify. Appellant also argues that the second arrest was invalid because there is no evidence that Horn or Johnson had proof appellant had committed a felony or was about to escape.

Initially, we will discuss appellant's claim that simply because Horn did not testify, there was no evidence regarding Horn's knowledge about the offense or appellant. Johnson related the information given N.C.I.C. and the notification by the dispatcher that the car had been stopped. Appellant's counsel objected to the information about the stop because it was hearsay.

Reasonable inferences arising from the evidence may be considered in determining whether probable cause existed. *Gish v. State,* 606 S.W.2d 883 (Tex.Cr.App.1980), *Lopez v. State,* 535 S.W.2d 643 (Tex.Cr.App. 1976). Johnson testified that he entered the information about the car in the N.C.I.C., and was notified a day later that the car had been stopped. He also testified that when he arrived at the described location, a Houston officer was detaining appellant. From the testimony in the record, we find that the trial court could reasonably infer that Horn stopped appellant based on the information which was entered in the N.C.I.C., specifically, that the car was connected with an abduction and sexual assault. Compare *Cassias v. State,* 719 S.W.2d 585 (Tex.Cr.App.1986) (facts in the search warrant affidavit did not support an inference that drugs were kept on premises to be searched).

The next issue concerns whether Horn's arrest was proper. The record clearly shows that Horn arrested appellant before Johnson arrived at the scene.[3] Thus, Horn had to have sufficient information to justify an arrest, coupled with circumstances which dispensed with the warrant requirement.

When one officer relies solely on another officer's request to arrest a suspect, probable cause must be based on the requesting officer's knowledge. *Tarpley v. State,* 565 S.W.2d 525 (Tex.Cr.App.1978). If the requesting officer has sufficient information to establish probable cause, then the arresting officer's arrest will be justified. *Id.* See also *Esco v. State,* 668 S.W.2d 358 (Tex. Cr.App.1982), and discussion at 361, footnote 4, and *Colston v. State,* 511 S.W.2d 10 (Tex. Cr.App.1974). A warrantless arrest is authorized under Art. 14.04, only if the officers have probable cause to believe that the person arrested is the offender. See *Dejarnette v. State,* 732 S.W.2d 346 (Tex.Cr.App.1987).

In *Garrison v. State,* 726 S.W.2d 134 (Tex. Cr.App.1987), this Court considered officers' information to connect the defendant with an offense. This Court noted that the sum of information known to the officers at the time of arrest may be considered in determining whether there was probable cause to arrest, citing *Woodward v. State,* 668 S.W.2d 337 (Tex.Cr.App.1984) (opinion on rehearing). The Court held that there was insufficient evidence to establish why the officers believed that particular defendant committed the offense.

In the instant case, whether Horn had probable cause must be determined from Johnson's information. Considering the evidence, including reasonable inferences, all Horn knew was that the car upon which appellant was seen sitting was possibly connected with an abduction and sexual assault. As in *Garrison,* the record lacks evidence to show Horn had any basis to connect appellant with the suspected offenses. Johnson and Horn may have had probable cause to believe the car was involved in the offense, but nothing to show appellant was involved. As such, Johnson, and necessarily Horn, lacked probable cause to arrest appellant at

---

3. The Court of Appeals described Horn's actions as a detention but given appellant's testimony that Horn handcuffed appellant and placed him

the time Horn made the first arrest.[4]

■ Even if Horn merely detained appellant, as held by the Court of Appeals, Johnson did not obtain sufficient information after he questioned appellant to establish probable cause to support the subsequent arrest. Johnson testified that after he arrived at the location described by the dispatch, appellant confirmed that the car belonged to him. Other than that and appellant's race, however, Johnson did not obtain any information to establish probable cause to believe that appellant was involved in the abduction and sexual assault. Given the facts, we find that there is insufficient evidence in the record to support a finding that Johnson had probable cause to support appellant's second arrest.[5]

■ We therefore sustain appellant's contention that the arrests were illegal because the officers lacked probable cause to connect appellant to the offense. Having found that appellant's arrest was illegal, we must now determine whether the taint of the illegal arrests was sufficiently attenuated from the confession. The Court of Appeals properly noted that the four-factor test discussed in *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), applies to determine whether a confession given after an illegal arrest is admissible. Those factors are:

1. Whether *Miranda* warnings were given;
2. The temporal proximity of the arrest and the confession;
3. The presence of intervening circumstances; and
4. The purpose and flagrancy of police misconduct.

In applying this test, the Court of Appeals held that the giving of *Miranda* warnings and the absence of flagrant police conduct

outweighed the "intervening circumstance" regarding the false statement that the complainant had identified appellant and the four hour lapse between the arrest and the confession.

We agree that the giving of *Miranda* warnings weighs in the State's favor. We also agree that Johnson's false statement regarding the complainant identification and the time between the arrest and confession weigh in appellant's favor.

We do not agree, however, that the flagrancy of misconduct militates in favor of a finding of taint attenuation. In the instant case, the officers lacked probable cause to arrest: the only connection between appellant and the offenses was his possession of the car and his race. This was not a situation in which officers made some technical error that invalidated the arrest; rather, there was a lack of probable cause to support the warrantless arrest. Thus, the arrest was clearly illegal and the illegality weighs strongly in appellant's favor.

In sum, we find that the *Brown* factors indicate that the taint of appellant's illegal arrests permeated the subsequent confession. The confession was therefore inadmissible. We therefore remand both causes to the court of appeals for a determination of harm per Tex.R.App.Pro. 81(b)(2). *Gipson v. State*, 844 S.W.2d 738 (Tex.Cr.App.1992); *Higginbotham v. State*, 807 S.W.2d 732 (Tex. Cr.App.1991). In light of our disposition on appellant's first ground for review, we dismiss his second ground as being moot.

CLINTON, J., concurs in result.

BAIRD, Judge, concurring on appellant's petition for discretionary review.

I write separately to address the Court of Appeals' holding that "trickery or deception

---

in the back of the police car, the facts show that Horn arrested appellant.

4. The State cites *Esco* for the rule that a police broadcast which reports a felony and basic description of the suspect satisfies the requirements for a warrantless arrest under Art. 14.04. In *Esco*, the record contained evidence establishing that the requesting officers had probable cause to believe the defendant committed the offense. In the instant case, Johnson did not have probable

cause when the N.C.I.C. information was entered or when appellant was arrested to believe that appellant committed the offense. Thus, *Esco* is factually distinguishable.

5. Since we found that there was insufficient information to establish probable cause to arrest, we need not determine whether the evidence showed that appellants was about to escape, the second requirement for a warrantless arrest under Art. 14.04.

does not render a confession involuntary, unless the method used was calculated to produce an untruthful confession or was offensive to due process." *Farmah v. State,* 789 S.W.2d 665, 671 (Tex.App.—Houston [1st Dist.] 1990).[1] The question of whether a confession is truthful has *no* bearing on the determination of whether the confession was voluntarily obtained under the Fifth and Fourteenth Amendments.

In *Rogers v. Richmond,* 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961), the Supreme Court considered the same issue. Rogers was questioned concerning a murder. When Rogers denied his involvement in the murder, an interrogating officer "pretended, in [Rogers'] hearing, to place a telephone call to police officers, directing them to stand in readiness to bring in [Rogers'] wife for questioning. After the passage of approximately one hour, during which [Rogers] remained silent [the interrogating officer] indicated that he was about to have [Rogers'] wife taken into custody. At this point [Rogers] announced his willingness to confess and did confess...." *Id.* 365 U.S. at 536–537, 81 S.Ct. at 737. The Connecticut Supreme Court affirmed, holding the confession was to be reviewed under an appellate standard of "whether this conduct induced the defendant to make an involuntary and hence *untrue statement.*"[2] *State v. Rogers,* 143 Conn. 167, 120 A.2d 409, 412 (1956).

On review, the United States Supreme Court stated:

Our decisions under [the Fourteenth Amendment] have made clear that convictions following the admission into evidence of confessions which are involuntary, i.e., the product of coercion, either physical or psychological, cannot stand. This is so *not* because such confessions are unlikely to be true but because the methods used to extract them offend an underlying principle in the enforcement of our criminal law: that ours is an accusatorial and not an inquisitorial system—a system in which the State must establish guilt by evidence independently and freely secured and may not by coercion prove its charge against an accused out of his own mouth. To be sure, confessions cruelly extorted may be and have been, to an unascertained extent, found to be *untrustworthy.* But the constitutional principle of excluding confessions that are not voluntary does *not* rest on this consideration. *Indeed, in many of the cases in which the command of the Due Process Clause has compelled us to reverse state convictions involving the use of confessions obtained by impermissible methods, independent corroborating evidence left little doubt of the truth of what the defendant had confessed.* Despite such verification, confessions were found to be the product of constitutionally impermissible methods in their inducement. Since a defendant had been subjected to pressures to which, under our accusatorial system, an accused should not be subjected, we were constrained to find that the procedures leading to his conviction had failed to afford him that due process of law which the Fourteenth Amendment guarantees.

*Id.* 365 U.S. at 541, 81 S.Ct. at 739–740 (citations omitted). The Court held:

From a fair reading of [the opinion of the Connecticut Supreme Court], we cannot but conclude that the question whether Rogers' confessions were admissible into evidence was answered by reference to a legal standard which took into account the circumstance of probable *truth* or falsity. [Footnote omitted.] And this is *not* a permissible standard under the Due Process Clause of the Fourteenth Amendment. The attention of the trial judge should have been focused, for purposes of the Federal Constitution, on the question whether the behavior of the State's law enforcement officials was such as to overbear petitioner's will to resist and bring about confessions not freely self-determined—a question to be answered with

---

1. To reach this holding the Court of Appeals relied on *Dotsey v. State,* 630 S.W.2d 343 (Tex. App.—Austin 1982, no pet.), and *Snow v. State,* 721 S.W.2d 943 (Tex.App.—Houston [1st Dist.] 1986, no pet.). However, neither Dotsey nor Snow filed a petition for discretionary review.

Consequently, we did not have the opportunity in either case to address the issue.

2. All emphasis is supplied unless otherwise indicated.

complete disregard of whether or not petitioner in fact spoke the truth.

*Id.,* 365 U.S. at 543–544, 81 S.Ct. at 741.

Consequently, appellant was entitled to "a fair hearing and a reliable determination on the issue of voluntariness, a determination *uninfluenced by the truth or falsity of the confession. Rogers v. Richmond [supra]." Figueroa v. State,* 473 S.W.2d 202, 205 (Tex. Cr.App.1971) (quoting *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964)). Therefore, the focus of the Court of Appeals should have been on the totality of the circumstances which is the correct standard of appellate review to determine whether a confession is voluntary.[3] *Frazier v. Cupp,* 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969). This is an appellate standard we have employed on many occasions. *See, Barney v. State,* 698 S.W.2d 114, 120 (Tex.Cr. App.1985); *Barton v. State,* 605 S.W.2d 605, 609 (Tex.Cr.App.1980); *and, Berry v. State,* 582 S.W.2d 463 (Tex.Cr.App.1979). *See also, Connor v. State,* 773 S.W.2d 13 (Tex.Cr.App. 1989); *and, Ex parte Brandley,* 781 S.W.2d 886, 893 (Tex.Cr.App.1989).

If an appellate court determines a confession was obtained in violation of the Fifth Amendment, the inquiry then becomes whether admission of the confession was nevertheless harmless under the standard announced in *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967) (The Court must determine whether the wrongfully admitted evidence "was harmless beyond a reasonable doubt."). In *Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), a divided Supreme Court addressed this issue. The Court held:

> It is evident from a comparison of the constitutional violations which we have held subject to harmless error, and those which we have held not, that involuntary statements or confessions belong in the former category. The admission of an involuntary confession is "trial error," similar in both degree and kind to the erroneous admission of other types of evidence. The evidentiary impact of an involuntary confession, and its effect upon.the composition of the record, is indistinguishable from that of a confession obtained in violation of the Sixth Amendment—of evidence seized in violation of the Fourth Amendment—or of a prosecutor's improper comment on a defendant's silence at trial in violation of the Fifth Amendment. When reviewing the erroneous admission of an involuntary confession, the appellate court, as it does with the admission of other forms of improperly admitted evidence, simply reviews the remainder of the evidence against the defendant to determine whether the admission of the confession was harmless beyond a reasonable doubt.

*Id.,* 499 U.S. at 310, 111 S.Ct. at 1265.

Therefore, to address whether a confession is voluntary, the appellate court must look to the totality of the circumstances, *not* the truthfulness of the confession. *Frazier v. Cupp, supra;* and, *Rogers, supra.* If the confession was not voluntarily obtained, the appellate court must then determine whether its admission was harmless. *Fulminante, supra.*

With these comments, I otherwise join the majority opinion.

McCORMICK, Presiding Judge, dissenting on appellant's petition for discretionary review.

Because the majority opinion will unduly hamper legitimate and constitutionally per-

---

**3.** Application of the "totality of the circumstances" standard of appellant review will vary, but in every case the appellate court is required to:

> ... sit to review the sum of the facts, and to determine if, and at what point, the totality of those facts renders a confession so suspect that to admit it into evidence would deny the defendant due process of law, and contravene the prohibition against compelled self-incrimination found in the Fifth Amendment.

> That point will shift from case to case, dependent upon the presence or absence of factors suggesting coercion, intimidation, overreaching, or the deprivation of rights secured by the constitution, which combine to defeat the free and independent exercise of the will of an accused.

*Jurek v. Estelle,* 623 F.2d 929, 941 (5th Cir.1980).

missible local law enforcement efforts, I dissent. The majority holds appellant's arrest was without probable cause, and the illegal arrest tainted appellant's confession. In reaching this conclusion the majority fails to give fair leeway to legitimate law enforcement efforts.

Appellant confessed soon after his arrest. He filed a pretrial motion to suppress the confession. Johnson, a West University law enforcement officer, testified at the suppression hearing that the victim was abducted by three black males who robbed and sexually assaulted her. She said the attackers were in an older model Buick with a white top and maroon bottom. Eight days after the offense, Johnson received information from a U.P.S. truck driver that he witnessed the victim's abduction. This witness said two black males were involved, and he gave Johnson a description of the car used in the offense that was consistent with the victim's description of the car. This witness also provided Johnson with the specific license plate number of the car.

Johnson ran a registration check on the license plate number, and discovered the car was registered to a woman who said she sold the car several years before but she did not have the name of the person to whom she sold it. Johnson entered the description and license plate number of the car with the National Crime Information Center (NCIC) which distributes information to the Houston Police Department (HPD) and all other law enforcement agencies in Harris County. Johnson described the car as a "wanted" car in connection with a sexual assault.

The next day, HPD officer Horn saw the car, broken down by the side of the road, and only appellant sitting on the car. Appellant testified Horn pulled up behind him, got out of his car, spoke to appellant, and then got back into his car. Shortly after that, Horn got out of his car a second time, handcuffed appellant, and placed him in the back of the police car. Around this time, an HPD dispatcher notified Johnson's dispatcher that HPD had the car with one individual. Horn did not testify at the suppression hearing.

Johnson testified he soon arrived at the scene and spoke with Horn. Johnson testified the car had the same license plate number described by the U.P.S. driver, and the car fit the description given by the victim. Johnson testified appellant was not able to provide a "fixed address." Appellant had a driver's license with an address on it but Johnson did not check the address because addresses on driver's licenses frequently are incorrect. Appellant said he owned the car, but the car was not registered in his name.

Johnson told appellant he was a suspect in a sexual assault investigation. Johnson testified he was afraid to release appellant because appellant knew he was a suspect, and Johnson did not know if he could find appellant again. Johnson testified he believed it would have been irresponsible to release appellant, so he took him to the West University Police Department. Johnson began interrogating appellant after he waived his *Miranda* [1] rights. Appellant confessed approximately four hours later soon after Johnson told him the victim had identified him from a photospread when she really had not. Johnson testified he did this to get appellant to confess.

To justify an arrest under Article 14.04, V.A.C.C.P., the State must prove the police had probable cause to believe the suspect committed a felony offense and had satisfactory proof the suspect was about to "escape" so there was no time to get a warrant. See *Dejarnette v. State,* 732 S.W.2d 346, 349–53 (Tex.Cr.App.1987). We are supposed to examine the totality of the circumstances in determining whether probable cause exists for a warrantless arrest. See *Amores v. State,* 816 S.W.2d 407, 413 (Tex.Cr.App.1991). Probable cause exists where the police have reasonably trustworthy information sufficient to warrant a reasonable person to believe a particular person has committed or is committing an offense. See *id.* The determination of whether probable cause exists concerns "the factual and practical considerations of everyday life on which reasonable and prudent [people], *not legal technicians,* act." (Emphasis added). See *Woodward v. State,* 668 S.W.2d 337, 345 (Tex.Cr.App.1982)

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

(op. on reh'g), cert. denied, 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985). Probable cause means more than bare suspicion but less than beyond a reasonable doubt. See *id.* And, the rule of probable cause seeks to accommodate the often opposing interests of safeguarding citizens from rash and unreasonable police conduct *and giving fair leeway to legitimate law enforcement efforts.* See *id.,* 668 S.W.2d at 345–46.

The test of probable cause for a warrantless arrest by an officer on the strength of a request by other law enforcement authorities is the information known to the requesting authorities. *Webb v. State,* 760 S.W.2d 263, 275 f.n. 17 (Tex.Cr.App.1988), cert. denied, 491 U.S. 910, 109 S.Ct. 3202, 105 L.Ed.2d 709 (1989); see also *Tarpley v. State,* 565 S.W.2d 525, 529–30 (Tex.Cr.App.1978). The applicable rule here is radioed police broadcasts, based on probable cause, reporting a felony and a description of the suspect and the vehicle are sufficient to satisfy Article 14.04. See *Esco v. State,* 668 S.W.2d 358, 360 (Tex. Cr.App.1982).

We have upheld warrantless arrests under Article 14.04 on facts similar to those here. See *Esco,* 668 S.W.2d at 360; *Myre v. State,* 545 S.W.2d 820, 825–26 (Tex.Cr.App.1977), *overruled on other grounds, Rabbani v. State,* 847 S.W.2d 555 (Tex.Cr.App.1992); *Mabry v. State,* 492 S.W.2d 951, 952–53 (Tex. Cr.App.1973) (police radio broadcast about robbery-murder and the description of two black suspects in a green 1965 car with Florida license plates provided officers with probable cause to arrest the defendant who was black and had been seen near the above-described car); *Rose v. State,* 482 S.W.2d 219, 220–21 (Tex.Cr.App.1972); *Mathis v. State,* 469 S.W.2d 796, 802–04 (Tex.Cr.App. 1971) (op. on reh'g). Here, private citizens provided Johnson with a reliable description of the car used in the offense including the specific license plate number, and appellant fit the general description of one of the suspects. See *Esco,* 668 S.W.2d at 360; *Mabry,* 492 S.W.2d at 952–53; *Rose,* 482 S.W.2d at 221. Under our prior cases, appellant's warrantless arrest was valid because it was based on probable cause under circumstances excusing the requirement of a warrant.

The majority opinion does not cite, discuss, distinguish or overrule the above-cited cases except *Esco* which the majority discusses in a footnote. The majority finds *Esco* distinguishable because the officers in *Esco* had probable cause to arrest. With all due respect to the majority, this begs the question. In *Esco,* the police had probable cause to arrest because, as in this case, they had a reliable description of the car involved in the offense, including the license plate number, and the defendant was in the car when the police stopped him. I submit that in all material respects this case is indistinguishable from *Esco.*

The only major distinction between this case and the above-cited "police broadcast" cases is appellant was arrested nine days after the commission of the offense; the defendants in the "police broadcast" cases were arrested shortly after the commission of the offenses, usually on the same day. However, under the facts and circumstances of this case, this distinction should not invalidate the existence of probable cause for appellant's arrest. Compare *Mitchell v. State,* 482 S.W.2d 221 (Tex.Cr.App.1972) (arrest occurred three days after the offense), *with, Hill v. State,* 692 S.W.2d 716, 718, 720, 722–23 (Tex.Cr.App.1985) (arrest occurred approximately one year after the offense). Under the totality of the circumstances, it would not have been unreasonable for Horn and Johnson to believe that appellant owned the car when Horn initially confronted him, and that he owned the car nine days earlier when the offense was committed; therefore, it was not "rash or unreasonable" for Horn and Johnson to believe appellant was involved in the commission of the offense based on his connection to the car.

The majority relies on *Garrison v. State,* 726 S.W.2d 134 (Tex.Cr.App.1987), for its holding that the police lacked probable cause to arrest appellant. That case is clearly distinguishable. In *Garrison,* the record contained gaps on what the police knew and when they knew it at the time of the defendant's warrantless arrest. *Garrison,* 726 S.W.2d at 137. Since the State carries the burden of proving the validity of a warrantless arrest, we held the record failed to show

the State sustained this burden. *Id.* Here, the record shows what the police knew and when they knew it.

The majority opinion also states the police lacked probable cause to connect appellant to the offense even though they "may have had probable cause to believe the car was involved in the offense." Cars do not commit offenses; people do. It is appellant's connection to the car that helps establish probable cause for his arrest, see, e.g., *Esco;* if the police had probable cause to believe the car was involved in the offense, then appellant's connection to the car also helped to establish appellant's connection to the offense. Am I to understand that under the majority's analysis the police could have arrested the car but they had to let appellant go, and is this the rule we are announcing to the bench and bar? If so, Texans can rest easier secure in the knowledge that police are now empowered to arrest cars based on probable cause.

The majority opinion also suggests appellant's race was an improper factor to consider in determining whether probable cause existed for his arrest. I disagree. Since the victim described her assailants as black males, appellant's race, together with the other circumstances outlined above, helped to establish probable cause for his arrest. See, e.g., *Mabry,* 492 S.W.2d at 952–53.

The majority opinion fails to identify any "rash and unreasonable police conduct." And, it certainly fails to give any leeway to legitimate law enforcement efforts. See *Woodward,* 668 S.W.2d at 345–46. I would uphold appellant's arrest under Article 14.04.

The majority also concludes appellant's confession was tainted by the illegal arrest. Assuming appellant's arrest was illegal, I would hold the illegal arrest did not taint appellant's subsequent confession. In applying the *Brown* attenuation of the taint analysis, the majority concludes the "flagrancy of misconduct" does not favor a "finding of taint attenuation," primarily because the police lacked probable cause to arrest appellant. See *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). The "purpose and flagrancy of police misconduct" is the most important *Brown* factor to consider in an attenuation of the taint analysis. See *Bell*

*v. State,* 724 S.W.2d 780, 789 (Tex.Cr.App. 1986), cert. denied, 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987).

Here, at the very least, the police had some level of objective, articulable suspicion of appellant's involvement in the offense. This record shows no outrageous, "willful, or at the very least negligent" police conduct which rises to the level of the flagrant police misconduct in *Brown,* 422 U.S. at 606, 95 S.Ct. at 2263. Under the circumstances, what else were the police going to do? Probably what any other reasonable police officer would have done under the circumstances. The fourth, and most important, *Brown* factor favors the State, and, applying the other *Brown* factors, the confession is admissible.

Moreover, excluding the confession in this case will not promote the underlying policy of the exclusionary rule which is to deter police misconduct. See *Green v. State,* 615 S.W.2d 700, 709–13 (Tex.Cr.App.1981) (McCormick, J., dissenting). On the contrary, the majority opinion penalizes and discourages reasonable law enforcement efforts.

I dissent.

CAMPBELL, WHITE and MEYERS, JJ., join this dissent.