HADLEY V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-04-401-CR

CHRISTOPHER JOSEPH HADLEY APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM COUNTY CRIMINAL COURT NO. 3 OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

INTRODUCTION

Appellant Christopher Joseph Hadley was charged by information with the offense of terroristic threat.  A jury found Appellant guilty.  Pursuant to a plea agreement between the State and Appellant, the trial court sentenced him to sixty days in jail subject to a work release, associated fines, and a condition that he complete an anger management course.  The court certified Appellant’s right to appeal.  Appellant complains in one point that the trial court erred in failing to grant his motion to suppress statements he made during an investigative detention, in violation of his rights under the Fourth Amendment to the United States Constitution.  
See
 U.S. Const. Amend. IV.
 

FACTUAL AND PROCEDURAL BACKGROUND

At the pretrial suppression hearing, the complainant Tony Kriss testified that, on the evening of September 8, 2003, he had driven Sherry Moses, a health care worker employed to care for his mother-in-law, to her home for her to let her dogs out and obtain a change of clothes.  He tried to help Moses fix her car, then pulled around to the front of her house and was waiting for her when Appellant walked up to his car and began making threatening statements. Kriss testified Moses came out of her house and asked if he wanted her to call 9-1-1.  When Appellant began threatening Kriss a second time, he asked her to call the police.  Kriss did not know Appellant’s identity. 

Sherry Moses testified that, as she was leaving her house, she saw Appellant harassing and threatening Kriss.  Moses heard Appellant curse Kriss and say he thought Kriss was a policeman and that he hated “pigs.”  Kriss told Appellant he was only there to give her a ride, and that he should go about his business.  Appellant approached Kriss as if he were going to physically attack him, she said.  She told Kriss they ought to call 9-1-1.  As the situation got out of hand, she broke down in tears and yelled at Appellant to stop.  Moses did not know Appellant.  Appellant apologized to her, but then told Kriss he was going to get his gun and come back and shoot him.  Kriss saw Appellant walk back toward his house as the police arrived.  Kriss was talking to the sergeant or supervisor, he recalled, when they heard Appellant come out of his garage and get in his pick-up truck.  

Sergeant Deaver with the Lewisville Police Department was the first officer to arrive in response to a dispatch that there was a disturbance at the address of Moses’s residence.  He recalled that Kriss was standing on the sidewalk and confirmed that he was the basis for the call.  Sergeant Deaver testified that Kriss was able to articulate what had gone on, explaining that he had helped a friend with her car and had pulled around to the front of the house when a man confronted him.  When Sergeant Deaver asked him who the other party was, Kriss pointed to a residence about three to five houses away.  Kriss told Sergeant Deaver that the man had told him he hated police and was going to get his shotgun.  

Sergeant Deaver was explaining the situation to Officer Cassels, who had also arrived by then, when Kriss saw Appellant moving toward a vehicle, and pointed him out to Sergeant Deaver.  Sergeant Deaver testified that the vehicle, a red Chrevrolet pick-up truck, started up and the headlights came on, and Kriss said, “I think that’s him.”  Sergeant Deaver went to his police vehicle to attempt to stop the pick-up, but, at that moment, Officer Barrett pulled up.  Sergeant Deaver radioed Officer Barrett to continue on and stop Appellant’s truck.  Sergeant Deaver testified he wanted Officer Barrett to stop the vehicle to identify the suspect so that any pertinent charges for terroristic threat could be filed.   

Officer Barrett testified he was dispatched to the location as back-up.  He confirmed that as he pulled up, Sergeant Deaver radioed him that there was a pick-up truck leaving and requested that he stop it.  Officer Barrett also recalled that Sergeant Deaver said that there might be a gun in the vehicle.  The only other information Officer Barrett had was that Appellant was a possible suspect in a disturbance.  He testified that the only reason he stopped the truck was because Sergeant Deaver had instructed him to do so.  

Officer Barrett activated his overhead lights.  The driver of the pick-up made a U-turn, headed the opposite direction, then made a right turn, and traveled thirty to forty yards out into a field before stopping.  The driver then “bailed out” and acted irate.  Officer Barrett testified that Appellant was the driver and told him he thought that Kriss was police or FBI and he did not want him there, and that was the reason for the disturbance.  Officer Barrett saw a shotgun on the front seat, picked it up and unloaded it, and laid it on the street. Appellant told him he had the shotgun with him because he hunted dove.  Sergeant Deaver arrived at that time and heard Appellant admit he had a confrontation with the person down the street but denied making any threats. Sergeant Deaver recalled that Appellant said he always carried a shotgun in his truck.  The officers determined no arrest needed to be made at that time.  After a follow-up investigation, a warrant was issued for Appellant’s arrest on September 26, 2003.  

PRESERVATION OF ERROR

At the outset, the State argues Appellant failed to preserve error because the trial court did not rule on his motion to suppress.
  We disagree.  The trial court first stated that it would “carry” the motion to suppress during a hearing on other preliminary motions.  However, the trial court proceeded to conduct the suppression hearing outside the jury’s presence before trial began.  After several witnesses testified, Appellant’s counsel argued that the evidence failed to establish reasonable suspicion for the stop of Appellant’s vehicle.  The trial court expressed its opinion that reasonable suspicion to make the stop existed, based upon the facts made known to Sergeant Deaver, and that Officer Barrett stopped Appellant based on Deaver’s instruction, so “there’s enough to get him there.”   

The trial court noted it had not yet heard the third officer’s testimony.  However, after Officer Cassels testified, the trial court noted that her testimony did not add anything on the suppression issue.  Trial began immediately thereafter, and the statements made by Appellant during the stop were admitted into evidence without objection by Appellant’s counsel.  After the trial court pronounced sentence, it stated on the record that it was certifying Appellant’s right to appeal in that “matters were raised by written motion, filed and 
ruled on before trial and not withdrawn or waived
.  That’s what it is, isn’t it?”  [Emphasis added.]  Appellant’s counsel responded, “Yes.”  

To preserve error for appellate review, the record must show:  (1) that an appellant made a timely request, objection, or motion stating grounds sufficient to provide notice to the trial court; and (2) that the trial court ruled on the motion either explicitly or implicitly.  
Tex. R. App. P.
 33.1(a)(1)(A),(a)(2)(A); 
see Garza v. State, 
126 S.W.3d 79, 81-82 (Tex. Crim. App. 2004);
 James v. State
, 102 S.W.3d 162, 169 (Tex. App.—Fort Worth 2003, pet. ref’d).  The court of criminal appeals requires that a defendant’s objections be specific enough to effectively communicate his complaint to the court but is “less stringent” as to the requirement of obtaining a ruling on a motion or objection.  
Rey v. State
, 897 S.W.2d 333, 336 (Tex. Crim. App. 1995).  A trial court’s ruling need not be expressly stated “if its actions or other statements otherwise unquestionably indicate a ruling.” 
 Id.; see also State v. Kelley, 
20 S.W.3d 147, 154 n.3 (Tex. App.—Texarkana 2000, no pet.) (noting that in some instances party need not obtain express ruling on objection, motion, or request to preserve error).    
 
 

The trial court not only certified that a ruling had been made but also stated on the record that it was certifying Appellant’s right to appeal matters raised by written motion filed “and ruled on before trial.”  Additionally, the trial court clearly indicated on the record its opinion that the stop was based on reasonable suspicion, subject to one more witness, whose testimony he thereafter noted had nothing to contribute.  While a careful practitioner should always pursue a motion, objection, or request to a ruling, we hold that under the totality of the circumstances of this case, the trial court “unquestionably” indicated an implicit adverse ruling.  
Compare In re C.J.G.
, No. 02-04-043-CV, 2005 WL 1405804, at *1-2 (Tex. App.—Fort Worth June 16, 2005, no pet.) (mem. op.) (holding no error preserved although certification provided appeal was on matters “raised by written motion filed and ruled on before trial,” when record contained no indication of ruling, illegible docket entry could have referred to more than one motion to suppress, evidence complained of not offered so as to indicate a ruling, and trial court stated only that it would allow an appeal of “the suppression issues”), 
with
 
Rose v. State
, No. 03-03-00126-CR, 2003 WL 21939581, at *1 (Tex. App.—Austin August 14, 2003, pet. ref’d) (mem. op.) (not designated for publication) (holding ruling on motion to suppress “implicit” although no record made of plea hearing that might have reflected a ruling, when certification stated case was “a plea-bargain case, but matters were raised by written motion filed and ruled on before trial and not withdrawn or waived”)
.  

It is generally accepted that “[w]hen a court overrules a pretrial motion to suppress evidence, the defendant need not subsequently object to the admission of the same evidence at trial to preserve error.”  
Garza
, 126 S.W.3d at 84.  Because we have determined that the trial court implicitly overruled Appellant’s pretrial motion to suppress, no subsequent objection was needed when the trial court admitted the statements made by Appellant during the stop.  We hold that error was preserved.

STANDARD OF REVIEW

We review a trial court’s ruling on a motion to suppress evidence under a bifurcated standard of review.  
Ford v. State
, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005);
 Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000).
  In reviewing the trial court’s decision, we do not engage in our own factual review.  
Romero v. State
, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); 
Best v. State
, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).  The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony.  
State v. Ross
, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); 
State v. Ballard
, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).  Therefore, we give almost total deference to a trial court’s determination of historical facts and review de novo the trial court’s application of the law of search and seizure.  
Carmouche
, 10 S.W.3d at 327; 
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  

The trial court did not make explicit findings of historical fact.  We therefore review the evidence in the light most favorable to the trial court’s ruling and assume that the trial court made implicit findings of fact supported by the record.  
Ford
, 158 S.W.3d at 493; 
Carmouche
, 10 S.W.3d at 328.  However, we review de novo
 
the determination of whether the stop and detention were “reasonable” as an ultimate question of Fourth Amendment law.  
Kothe v. State, 
152 S.W.3d 54, 62 (Tex. Crim. App. 2004);
 Carmouche
, 10 S.W.3d at 328; 
Guzman
, 955 S.W.2d at 89. 

INVESTIGATIVE DETENTION

Appellant contends that the officers did not have reasonable suspicion to stop his vehicle because they did not personally observe the occurrence between Appellant and the complainant or any suspicious conduct.  Law enforcement officers may stop and briefly detain persons suspected of criminal activity on less information than is constitutionally required for probable cause to arrest
.  Terry v. Ohio
, 392 U.S. 1, 27, 88 S. Ct. 1868, 1883 (1968).  Under the Fourth Amendment, a temporary detention is justified when the detaining officer has specific articulable facts which, together with rational inferences from those facts in light of the officer’s experience and general knowledge, would lead a reasonable officer to conclude that the person detained is, has been, or soon will be engaged in criminal activity. 
 Id
. at 21-22, 88 S. Ct. at 1880; 
Brother v. State
, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005), 
cert. denied
, 126 S. Ct. 1172 (2006); 
Kothe, 
152 S.W.3d at 63-64.  The officer must be able to articulate more than an “inchoate and unparticularized suspicion or ‘hunch’ of criminal activity.
”  Illinois v. Wardlow
, 528 U.S. 119, 124, 120 S. Ct. 673, 676 (2000).  “Reasonableness” under Fourth Amendment standards is a fact-specific inquiry measured in objective terms by examining the totality of the circumstances.
 
Kothe
, 152 S.W.3d at 63.  

Appellant first contends that individualized suspicion of the officer who stopped his vehicle was required in order to furnish reasonable suspicion for the stop.  He argues that Officer Barrett, who actually made the stop, admitted that he had no personal knowledge of any terroristic threat by Appellant or the circumstances surrounding the disturbance, and testified that he merely stopped Appellant’s vehicle at Sergeant Deaver’s instruction.  Thus, Appellant argues, based on the testimony of Officer Barrett, the stop was unlawful.  We disagree.   The factual basis for stopping a vehicle need not arise from the officer’s personal observation, but may be supplied by information acquired from another person
.  Brother
, 166 S.W.3d at 257 (citing 
Adams v. Williams
, 407 U.S. 143, 147, 92 S. Ct. 1921, 1924 (1972)).  When one officer relies solely on another officer’s request to stop or arrest a suspect, the reasonable suspicion or probable cause must be based on the 
requesting
 officer’s knowledge.  
See Farmah v. State
, 883 S.W.2d 674, 678-79 (Tex. Crim. App. 1994).  

If the requesting officer had sufficient information to establish probable cause or reasonable suspicion, then the second officer’s arrest or investigative detention generally will be justified.  
Id.  
If the requesting officer is in possession of sufficient knowledge, then he need not detail that knowledge to the arresting officer. 
 Tarpley v. State
, 565 S.W.2d 525, 529-30 (Tex. Crim. App. 1978).  In examining the totality of the circumstances, we consider the sum of the information known to the cooperating agencies or officers at the time of the detention.  
Fearance v. State
, 771 S.W.2d 486, 509 (Tex. Crim. App. 1988), 
cert. denied
, 492 U.S. 927 (1989).  When several officers are working together, we consider the information known collectively by all the officers.  
Id.; Hoag v. State
, 728 S.W.2d 375, 380 (Tex. Crim. App. 1987).  Specifically, when one officer detains an individual based upon a radio dispatch received from another officer, it is the officer requesting the information who must have reasonable suspicion to justify the detention
.  Fearance,
 771 S.W.2d at 509;
 Young v. State
, 133 S.W.3d 839, 841 (Tex. App.—El Paso 2004, no pet.).

The authorities cited by Appellant are distinguishable from our case.  In
 Klare v. State
, a single officer was involved in the stop, and the discussion in that opinion relied upon by Appellant necessarily addressed only that officer’s personal observations. 
 76 S.W.3d 68, 71 (Tex. App.—Houston [14th Dist.] 2002, pet. ref’d).
  In 
Stewart v. State
, the issue was simply whether an uncorroborated anonymous tip was sufficient to establish reasonable suspicion. 
 
22 S.W.3d 646, 648 (Tex. App.—Austin 2000, pet. ref’d).  As Appellant points out, the court in
 State v. Jennings
 observed that “both the trial and reviewing courts must proceed cautiously when it appears that the detaining officer acted upon 
nothing other than 
a radio dispatch or request to apprehend.” 958 S.W.2d 930, 933 (Tex. App.—Amarillo 1997, no pet.) (emphasis in original).  The court stated that it is not enough to merely show that a stop was made because another officer requested it. 
 Id
.  But the court of appeals in
 Jennings
 further stated:  “In that situation, the focus lies upon the information known to the officer who made the broadcast.”  
Id
.  While this does not require that he testify, the State must present evidence justifying the officer’s broadcast or request; “in other words, it must be shown that the officer who made the stop or arrest did so upon the request of someone who had reasonable suspicion or probable cause.” 
 Id.
   

In 
Jennings
, the officer who made the stop did so based on a dispatch to a “domestic disturbance.”  
Id. 
at 932.
  
She received a second dispatch en route describing a vehicle, the driver of which was wanted for questioning in connection with the disturbance.  
Id.  
She testified she stopped the vehicle based solely upon the request to stop coupled with the description of the vehicle.  
Id.  
The officers who had investigated the disturbance did not testify, nor did the officer whose broadcast she relied upon in making the stop.  
Id.  
Absent any evidence regarding information known to the officer who allegedly made the request or investigated the incident, the court held that reasonable suspicion to justify the stop was not shown.
  
Id
. at 933-34.  

The critical issue upon which we must focus, then, is whether the requesting officer in this case had reasonable suspicion to justify instructing Officer Barrett to stop and detain Appellant.  In this case, unlike 
Jennings
, that officer testified regarding the articulable facts upon which he based his request to stop Appellant’s vehicle.  Appellant argues that the only basis given by Sergeant Deaver was “to identify the suspect so that pertinent charges could be filed.  At the time we had no identification of the suspect.”  Appellant further points to Sergeant Deaver’s testimony on cross-examination that no information was provided that would give an indication of the credibility of the complainant, Kriss, and his acknowledgment that he had not personally observed anything that had occurred between Kriss and Appellant.  Therefore, relying on 
Jennings
, Appellant argues that Sergeant Deaver did not have reasonable suspicion to call for the stop.  Again, we disagree.

Sergeant Deaver arrived on the scene shortly after hearing the dispatch based upon the 9-1-1 call by Moses reporting the disturbance.  The record is undisputed that Sergeant Deaver spoke directly with the complainant of the asserted terroristic threat, Kriss, who described the confrontation to him, leading him to believe that the offense of terroristic threat had been committed. Kriss also displayed his reliability as a witness by identifying himself and remaining at the scene, thereby putting himself in a position to be held accountable, and locating and pointing out Appellant to Sergeant Deaver as the person who had made the threats as he attempted to drive away.  Sergeant Deaver directed that the vehicle Appellant was driving be stopped so that he could be identified, as neither Kriss nor Moses knew him.  

Whether information provided by a citizen-informant furnishes the requisite level of reasonable suspicion to justify an investigative detention depends on the totality of the circumstances in the particular case.  
Woods v. State
, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997).  The information provided must possess sufficient indicia of reliability as well as sufficient content.  
Id
. (citing 
Alabama v. White
, 496 U.S. 325, 329, 110 S. Ct. 2412, 2415-16 (1990)).  Reliability is generally shown by the very nature of the circumstances under which the incriminating information became known to the citizen.  
Brother
, 166 S.W.3d at 258, 259 & n.4 (holding stop may be justified based on facts provided by citizen-eyewitness, when the information is adequately corroborated by the officer).  

The citizen’s veracity, reliability, and basis for knowledge are highly relevant in determining the value of the information.
  White, 
496 U.S. at 328-29, 110 S. Ct. at 2415; 
see
 
Pipkin v. State
, 114 S.W.3d 649, 654 (Tex. App.—Fort Worth 2003, no pet.) (holding facts relayed by cell phone caller adequately corroborated when caller was eyewitness to criminal behavior, provided detailed description and location of defendant’s vehicle, and made himself accountable by providing contact information to officer);
 State v. Stolte
, 991 S.W.2d 336, 341 (Tex. App.—Fort Worth 1999, no pet.) (holding detailed information related by caller describing erratic driving and identifying suspect’s car and location, demonstrated sufficient reliability when caller was concerned citizen and permitted himself to be identified after stop).      

A private citizen whose only contact with the police is a result of having witnessed a criminal act by another is considered inherently credible and reliable.  
Esco v. State
, 668 S.W.2d 358, 360-61 (Tex. Crim. App. 1982); 
see also Johnson v. State, 
171 S.W.3d 643, 649 (Tex. App.—Houston [14th Dist.] 2005, pet. ref’d) (holding unnamed citizen who presents unsolicited, face-to-face report of
 
criminal conduct inherently more reliable than anonymous tip);
 Pipkin
, 114 S.W.3d at 655
 (noting that detailed description of the wrongdoing, accompanied by information that the citizen observed the event firsthand, entitles the information to greater weight)
.   

The same is true when the citizen is the victim of the crime.  
Victor v. State
, 995 S.W.2d 216, 224 (Tex. App.—Houston [14th Dist.] 1999, pet. ref’d);
 Nelson v. State
, 855 S.W.2d 26, 30 (Tex. App.—El Paso 1993, no pet.); 
see also Virgoe v. State
, No. 05-02-01040-CR, 2003 WL 21142777, at *3 (Tex. App.—Dallas May 19, 2003, pet. ref’d) (not designated for publication); 
Brown v. State, 
No. 01-97-01067-CR, 2000 WL 190196, at *2 (Tex. App.—Houston [1st Dist.] Feb. 17, 2000, no pet.) (not designated for publication).     
 

Considering the totality of the circumstances together, Kriss established his reliability by (1) waiting for the arrival of the police and putting himself in a position to be held accountable; (2) talking freely with Sergeant Deaver in describing the confrontation; (3) pointing out Appellant’s location and vehicle as he was leaving, which the officer could immediately corroborate; (4) remaining at the scene during the investigation; and (5) describing himself as the victim of the alleged threats.  We hold that Sergeant Deaver could reasonably rely on the information provided by Kriss, which established reasonable suspicion to instruct Officer Barrett to make the stop.

CONCLUSION

We hold that the State established reasonable suspicion for the investigatory stop and detention of Appellant; hence, the trial court correctly denied Appellant’s motion to suppress.  We overrule Appellant’s sole issue and affirm the judgment of the trial court.  

ANNE GARDNER

JUSTICE

PANEL B: LIVINGSTON, GARDNER, and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  June 8, 2006

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.